# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| STRATASYS, INC., | Case No. 17-CV-5524 |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| CHRISTOPHER W. KRAMPITZ, individually, & NOVA MACHINA LLC, | |
| Defendants. | |

## INTRODUCTION

In the Complaint, Stratasys alleges facts describing that Defendant Christopher Krampitz breached two contracts and a duty of loyalty owed to Stratasys by operating Nova Machina LLC as an allegedly competitive business during and after his employment with Stratasys. Beyond these relatively straightforward allegations, Stratasys describes occasions wherein Krampitz interchangeably used his Stratasys, personal, and Nova Machina platforms and contact information during his employment with Stratasys, as well as other miscellaneous allegations untethered to any actionable claim.

From these allegations, Stratasys lists nine separate counts: (I) breach of a restrictive agreement and employment contract; (II) unjust enrichment with respect to unreturned conditional bonuses; (III) breach of a duty of loyalty owed to

Stratasys; (IV) misappropriation of Stratasys' trade secrets, in violation of the Minnesota Uniform Trade Secrets Act ("MUTSA"), Minn. Stat. § 325C.01, et seq.; (V) conversion of Stratasys property—particularly, unauthorized use of a Stratasys credit card; (VI) misappropriation of trade secrets, in violation of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836; (VII) unfair competition against Stratasys; (IX) deceptive trade practices, in violation of the Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. § 325D.44;[1] and (X) account stated in the amount of $55,279.44.

Despite listing nine counts, the Complaint's factual allegations support only Counts I-III. Lacking sufficient facts to support Counts IV-VII and IX-X, the Court should dismiss these counts for failure to state a claim. Furthermore, because the DTSA violation (Count VI) provides the only basis for original federal jurisdiction, upon dismissing Count IV-VII and IX-X, the Court should decline supplemental jurisdiction over the remaining claims and remand the case to state court.

## FACTS[2]

### 1.   Background

Stratasys provides services relating to "3D printing and additive solutions, materials and services." Complaint ¶ 1.

---

[1] The Complaint does not list a Count VIII.

[2] All facts come from the Complaint and "documents necessarily embraced by the complaint." *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

On August 12, 2016, Stratasys offered Krampitz the position of Principal Consultant. *Id.* ¶ 22. As Principal Consultant, Krampitz was expected to help customers develop products using 3D printing and additive manufacturing and ensure that customers understand the relevant technology. *See id.* ¶ 2. In the role, Krampitz had "unfettered access to Stratasys' customer lists, potential customer lists," and other information that Stratasys deemed confidential. *Id.* ¶ 4.

## 2.    Employment Contracts

In its offer letter, Stratasys offered Krampitz a signing bonus of $30,000 and a stipend for unspecified relocation expenses, estimated at $52,000. *Id.* ¶ 22. If Krampitz left Stratasys between 0 and 12 months of accepting the offer, Stratasys required repayment of 100% of the bonus and relocation stipend; if he left between 12 and 24 months, Stratasys required repayment of 50%; and if he left after 24 months, Stratasys required no repayment. *Id.* Krampitz agreed to the terms in the offer letter. Pl. Ex. A at 4 (signed offer letter).

As a condition of employment, Stratasys also required Krampitz to agree to restrictive covenants contained within a Restrictive Agreement. Complaint ¶ 23. As emphasized in the Complaint, the Restrictive Agreement: (1) defines "Confidential Information" as the term is used in the contract, *id.* ¶ 27; (2) prohibits the use, communication, divulgence, or disclosure of "Confidential Information," *id.* ¶ 28; (3) requires the return of all "Confidential Information"

upon the conclusion of employment, *id.*; (4) provides that Stratasys maintains property rights to all "Confidential Information" and categories of work product created by Krampitz (collectively referred to as "Company Works"), *id.* ¶ 29; (5) prohibits the disclosure, use, marketing, or sale of any "Company Works," *id.*; and (6) prohibits competition and solicitation of Stratasys customers and/or employees from the date of agreement until one year after the end of employment, *id.* ¶ 30. Krampitz agreed to the terms in the Restrictive Agreement. Pl. Ex. B at 11 (signed Restrictive Agreement). Stratasys also maintains separate internal policies that purport to similarly restrict its employees. Complaint ¶¶ 32-37.

On August 14, 2016, Krampitz accepted the Principal Consultant position and agreed to the aforementioned terms of the offer letter and Restrictive Agreement. *Id.* ¶ 24.

### 3.    Nova Machina

Prior to becoming Principal Consultant at Stratasys, Krampitz organized Nova Machina LLC in the State of Wyoming. *Id.* ¶ 19; *see also* Def. Ex. 1 (Nova Machina articles of organization—public record embraced by the Complaint). According to the Complaint, "Nova Machina is a consulting company that solicits and supports manufacturers in 3D technologies such as process intensification, smart manufacturing, and new materials." Complaint ¶ 7. As owner-principal of Nova Machina, Krampitz possessed a Nova Machina email address, registered the

4

web domain "novamachina.com," and identified his relationship with Nova Machina in professional bios. *See id.* ¶¶ 17, 19, 39-41, 45-46, 49, 50, 53.

On occasion, Krampitz exchanged emails between his Stratasys email account and his Nova Machina email account. *Id.* ¶¶ 39-40, 46, 50, 53. Three emails that Krampitz exchanged between the two accounts apparently related to his performance of duties as a Stratasys employee. *See id.* ¶¶ 46 (consulting proposal for potential Stratasys customer); 50 (document Krampitz signed on behalf of Stratasys); 53 (attendance data for Stratasys webinar). Only once did Krampitz direct work-related information from his Stratasys account to his Nova Machina account—when he sent attendance data for a Stratasys webinar. *Id.* ¶ 53. Krampitz *never* exchanged any emails between his Stratasys account and any Nova Machina account that did not belong to him personally—all emails were sent from Krampitz to Krampitz. *See generally id.*

In addition to occasionally using multiple email accounts when performing his duties as a Stratasys employee, Krampitz sometimes used his personal phone number and address for work-related purposes. *See id.* ¶ 42, 44, 49.

**4.    Resignation**

On October 23, 2017, Krampitz resigned from the Principal Consultant position, effective November 3, 2017. *Id.* ¶ 51. At some point, Krampitz's end date was pushed to November 6, 2017. *Id.* ¶ 54. Krampitz continued using both his

Stratasys and Nova Machina email addresses between October 23 and November 6. *Id.* ¶¶ 52-53.

On November 3, 2017, Stratasys conducted an exit interview with Krampitz. *Id.* ¶ 54. At the exit interview, Stratasys reminded Krampitz of his continuing post-employment obligations under the Restrictive Agreement and raised Krampitz's obligation to repay 50% of the signing bonus and relocation expenses. *Id.* Stratasys apparently calculated the amount Krampitz owed as $55,279.44. *Id.* Stratasys communicated that Krampitz had ten days to repay that amount. *Id.*

On November 10, 2017 (seven days after the exit interview), Stratasys sent Krampitz a cease and desist letter. *Id.* ¶ 56. In the letter, Stratasys again demanded repayment of $55,279.44. *Id.* Additionally, Stratasys again reminded Krampitz of his obligations under the Restrictive Agreement, alleged certain violations of the Restrictive Agreement and related policies/duties, and demanded that Krampitz take immediate action to cease and remedy the alleged violations. *Id.* ¶ 57-58; *see also* Pl. Ex. C (cease and desist letter).

On November 11, 2017, Krampitz responded to the cease and desist letter. Complaint ¶ 59. In Krampitz's response letter, he affirmed his commitment to his obligations to Stratasys, stated "that any confidential information or company property in [his] possession was used with the intent of bringing . . . business opportunities [to Stratasys]," and clarified the circumstances underpinning the

alleged violation of his duties to Stratasys. *See* Def. Ex. 2 (Krampitz's November 11 response letter—embraced by the Complaint). Specifically, Krampitz clarified that: (1) despite occasionally conducting business from a non-Stratasys email account, he only ever used confidential information or company works to pursue the best interests of Stratasys; (2) he deleted all emails exchanged between his Stratasys account and his non-Stratasys accounts upon receipt of Stratasys' letter; (3) he no longer possessed any confidential information or company works; and (4) Nova Machina is not a competitive business because it seeks only to drive awareness of 3D-printing and related technology among manufacturers (typically on a pro bono basis) to build demand for the types of services provided by Stratasys and others. *Id.* at 1-2. Krampitz expressed confusion as to certain other allegations made by Stratasys, but assured "that any statements made to Customers were intended to serve their best interests and those of Stratasys." *Id.* at 2. Krampitz concluded by verifying that he had complied with all of the requested actions in Stratasys' letter and encouraged Stratasys to provide additional information about the areas that he expressed confusion about. *Id.* Krampitz did not respond to Stratasys' demand for repayment of $55,279.44.

   This suit follows.

## LAW & ANALYSIS

### 1.   Dismissal for Failure to State a Claim

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss for failure to state a claim, courts must "draw all reasonable inferences in favor of the nonmoving party." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015). However, the court need not accept "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *Id.* (internal citation omitted) (quoting *Iqbal*, 556 U.S. at 678). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). "Where . . . claims relate to a written contract that is part of the record in the case, [courts] consider the language of the contract when reviewing the sufficiency of the complaint." *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010).

The Complaint alleges sufficient factual matter only as to Count I (breach of contract), Count II (unjust enrichment), and Count III (breach of duty of loyalty). The remainder of the claims rest solely on conclusory statements, legal

conclusions, and/or factual matter creating no entitlement to relief. As such, they should be dismissed.

### a. Count IV and VI plead insufficient facts to state claims under the MUTSA and DTSA.

In Count IV, Stratasys alleges a violation of the MUTSA, Minn. Stat. § 325C.01, et seq. In Count VI, Stratasys alleges a violation of the DTSA, 18 U.S.C. § 1836, et. seq.

The MUTSA "requires that a party seeking protection show both the existence and the misappropriation of a trade secret." *Wilson v. Corning, Inc.*, 171 F. Supp. 3d 869, 881 (D. Minn. 2016) (citing *Electro-Craft Corp. v. Controlled Mot., Inc.*, 332 N.W.2d 890, 897 (Minn. 1983)). Similarly, the DTSA requires a plaintiff to allege both the existence of a trade secret and misappropriation. *See Search Partners, Inc. v. MyAlerts, Inc.*, 2017 WL 2838126, at *2 (D. Minn. Jun. 30, 2017). Due to the similarities between the MUTSA and DTSA, the Court may look to caselaw interpreting the MUTSA as persuasive authority for interpreting the DTSA. *See Source Prod. & Equip. Co. v. Schehr*, 2017 WL 3721543, at *2 (E.D. La. Aug. 29, 2017) ("[B]oth the House and Senate committee reports suggest that the DTSA largely conforms with state trade secrets law. Thus, existing state law on trade secrets informs the Court's application of the DTSA." (internal citation omitted)).

For the reasons that follow, Stratasys fails to plead sufficient facts to support the misappropriation and trade secret elements of its MUTSA and DTSA claims.

### i.   Stratasys does not plead misappropriation.

"Misappropriation" under the MUTSA means:

(i)    acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(ii)   disclosure or use of a trade secret of another without express or implied consent by a person who
    (A) used improper means to acquire knowledge of the trade secret; or
    (B) at the time of disclosure or use, knew or had reason to know that the discloser's or user's knowledge of the trade secret was
        (I)    derived from or through a person who had utilized improper means to acquire it;
        (II)   acquired under circumstances giving rise to a duty to the person seeking relief to maintain its secrecy or limit its use; or
    (C) before a material change of the discloser's or user's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Minn. Stat. § 325C.01, subd. 3. "Misappropriation" under the DTSA is substantially similar. *See* 18 U.S.C. § 1839(5) (tracking the MUTSA definition nearly word for word). Put simply, "misappropriation" under both the MUTSA and DTSA require allegations of improper acquisition, disclosure, or use of a trade secret. *See Arizant Holdings Inc. v. Gust*, 668 F. Supp. 2d 1194, 1203 (D. Minn.

2009) (MUTSA); *see also Phyllis Schlafly Revocable Trust v. Cori*, 2016 WL 6611133, at *2 (E.D. Mo. Nov. 9, 2016) (DTSA).

The Complaint contains no fact allegation that Krampitz improperly acquired any trade secrets. Indeed, the Complaint affirmatively alleges that Krampitz had authority to access Stratasys' trade secrets by virtue of his position. Complaint ¶ 4. Such allegation forecloses an argument that Krampitz improperly acquired trade secrets.

The Complaint contains no fact allegation that Krampitz disclosed any trade secrets. Stratasys' theory of disclosure apparently stems from its allegations that, on three occasions, Krampitz exchanged information between his Stratasys and Nova Machina email accounts. *See generally id.* ¶¶ 46, 50, 53. Stratasys does not allege that Krampitz emailed the information to any other person—at Nova Machina or elsewhere. Indeed, Stratasys does not allege that anyone besides Krampitz even works for Nova Machina. *See* Def. Ex. 1 (Nova Machina articles of organization, containing only Krampitz's name). Instead, Stratasys only alleges that Krampitz exchanged information between his own two accounts on a mere three occasions. *See* Complaint ¶¶ 46, 50, 53. An individual does not "disclose" a trade secret unless he exposes it to view or makes it known to at least one other person. *See* "disclose," *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/disclose (last visited Jan. 8, 2018); *see also State v.*

*Haywood*, 886 N.W.2d 485, 488 (Minn. 2016) ("When determining the plain and ordinary meaning of undefined words or phrases in a statute, courts should look to the dictionary definitions of those words and apply them in the context of the statute."); *Union Pacific R.R. Co.*, 863 F.3d 816, 825 (8th Cir. 2017) ("In the absence of a statutory definition, we will give a term its ordinary dictionary meaning."). By forwarding information from himself to himself, on only three occasions, Krampitz maintained the confidentiality of that information—he disclosed it to nobody.

The Complaint contains no fact allegation that Krampitz used any trade secrets. Stratasys does not allege that Krampitz used Stratasys information for any unauthorized purpose. Nor does Stratasys allege that it had policies prohibiting Krampitz from conducting Stratasys business from other email accounts. Absent any direct or circumstantial fact allegations that Krampitz used Stratasys' information for any unauthorized purpose, Krampitz's occasional use of two email accounts does not raise an inference of improper use or disclosure of Stratasys information. *See Arizant*, 668 F. Supp. 2d at 1203 (finding that a defendant's "act of forwarding . . . e-mails to himself" is not improper use or disclosure unless doing so violated company policy).

Stratasys alleges that Krampitz exchanged only three specific emails between his accounts during a three-week period.[3] The limited scope of this alleged conduct contradicts any inference of a scheme to use or disclose trade secrets. Notably, for two of the emails, Krampitz sent information *from* his Nova Machina account *to* his Stratasys account. *See* Complaint ¶ 46, 50. In other words, Krampitz's Stratasys account was the destination for two of the three supposedly incriminating emails. Rather than demonstrating unauthorized use of information, the fact that Krampitz forwarded information to his Stratasys email demonstrates *authorized* use of the information—he brought the information onto Stratasys' server, rather than taking it away. The Court can reasonably infer from these two allegations that Krampitz exchanged information between his accounts for the purpose of conducting business on Stratasys' behalf. No other allegation creates any inference to the contrary.

In sum, Stratasys merely alleges that Krampitz exchanged emails between his own Stratasys and Nova Machina accounts (with two of three emails directed *from* his Nova Machina account *to* his Stratasys account). Such allegations do not

---

[3] It is true that Stratasys also alleges that Krampitz exchanged "numerous" emails between his two accounts. *See* Complaint ¶¶ 39-40. While Stratasys alleges that Krampitz "purged" those emails, it is clear that Stratasys was able to recover all emails from Krampitz's Stratasys account. *See id.* ¶ 39 (indicating knowledge that certain emails were "test" emails, despite alleging that Krampitz "purged" them). Therefore, one must assume that the emails specifically identified in the Complaint are the only emails at issue.

adequately plead the misappropriation elements of the MUTSA and DTSA, even granting all reasonable inferences.

### ii.  Stratasys does not adequately plead trade secrets

Even if Stratasys adequately pleaded misappropriation, it does not adequately plead the existence of trade secrets. Under the MUTSA, "'[t]rade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process," so long as the information

> (i)   derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (ii)  is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Minn. Stat. § 325C.01, subd. 5. "Trade secrets" under the DTSA are substantially similar. *See* 18 U.S.C. § 1839(3).

With respect to the three emails Krampitz sent between his Stratasys and Nova Machina accounts, Stratasys refers to three pieces of information: "a consulting proposal for a potential customer," a "scanned document . . . titled, 'ITAR/Export Controlled Security Policy for Digital Storefront,'" and the "attendance list" for a Stratasys webinar. Complaint ¶¶ 46, 50, 53. Stratasys does not even attempt to allege that these items derive independent economic value from their secrecy or describe how it endeavored to maintain the secrecy of these particular items. Instead, it only states in sweeping conclusory terms that its

14

"Confidential Information . . . derives independent economic value from not being generally known or readily assessable to other persons who could obtain economic value from its disclosure or use," *id.* ¶ 85 (MUTSA), and that its "confidential information has significant independent economic value to Stratasys and, potentially, to its competitors, and provides Stratasys with an economic and competitive advantage in the market," *id.* ¶ 100 (DTSA). Stratasys' conclusory allegations fail to establish the existence of trade secrets for three reasons.

First, conclusory allegations of independent economic value are insufficient to plead a trade secret under the MUTSA and DTSA. *Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1044 (D. Minn. 2010) ("Beyond . . . conclusory statements, however, Hot Stuff has not pleaded facts showing that the identified information contained trade secrets. Merely stating that the information is confidential is insufficient."); *see also Iqbal*, 556 U.S. at 678. Stratasys fails to state claims under the MUTSA and DTSA on that ground alone.

Second, Stratasys does not describe, even in the most general terms, what the "consulting proposal" and "scanned document" contain. Neither Defendants nor the Court have sufficient information to accept Stratasys' naked allegation that those items are trade secrets. *See Excel Mfg., Inc. v. Wondrow*, 2016 WL 1551674, at *4 (Minn. App. Apr. 18, 2016) ("General categories of information are not sufficiently specific to qualify as trade secrets under the [MUTSA]." (citing

*Electro-Craft Corp.*, 332 N.W.2d at 898; *Luigino's, Inc. v. Peterson*, 317 F.3d 909, 912 (8th Cir. 2003))).

Third, even with respect to the "attendance list" for the Stratasys webinar, Stratasys alleges only that it is a potential customer list. *See* Complaint ¶ 53. Potential customer lists "generally do not constitute trade secrets." *WEG Elec. Corp. v. Pethers*, 2016 WL 1441793, at *2 (D. Minn. Apr. 12, 2016) (citing *NewLeaf Designs, LLC v. BestBins Corp.*, 168 F. sup. 2d 1039, 1043 (D. Minn. 2001); *United Prods. Corp. of Am. v. Cederstrom*, 2006 WL 1529478, at *5 (Minn. App. Jun. 6, 2006))). Absent any unique circumstances, the "attendance list" is not a trade secret. *See id.* at *2-3.

As a point of reference, Stratasys' sparse allegations of trade secrets fall well short of allegations that typically survive a motion to dismiss. *See, e.g.*, *Jacobs v. Gradient Ins. Brokerage, Inc.*, 2016 WL 1180182, at *2 (D. Minn. Mar. 25, 2016) (finding that a plaintiff sufficiently pleaded a MUTSA claim by providing a "detailed" list of documents that the defendant allegedly emailed to a personal account and describing "in detail" its efforts to maintain secrecy and the existence of economic value, but observing that even with such allegations the claim was not robustly pleaded).

In sum, Stratasys' Complaint pleads only conclusory statements and legal conclusions in support of the existence of trade secrets. Although the pleading

standard is a liberal one, such bare allegations cannot support the trade secrets elements of the MUTSA and DTSA. For this reason, and for failure to sufficiently allege misappropriation, the Court should dismiss Counts IV and VI for failure to state a claim.

### b.  Count V pleads insufficient facts to state a claim of conversion.

In Count V, Stratasys alleges that Krampitz converted Stratasys property for his own use. Conversion is "an act of willful interference with personal property, 'done without lawful justification by which any person entitled thereto is deprived of use and possession.'" *Jacobs*, 2016 WL 1180182, at *2 (quoting *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997)). Stratasys alleges that Krampitz converted "property, documents and Confidential Information, including but not limited to making unauthorized purchases using a credit card to which he had access as a Stratasys employee." Complaint ¶ 94.

Stratasys' conversion claim must be dismissed on three grounds. First, the reference to "unauthorized purchases using a credit card" is conclusory and does not appear anywhere else in the Complaint. What credit card? What purchases? What was the scope of Krampitz's purchase authority? Without the baseline factual detail required by the Federal Rules, the conclusory and inflammatory allusion to unauthorized purchases cannot furnish grounds for a conversion claim. *Iqbal*, 556 U.S. at 678.

Second, Stratasys fails to allege that it has been deprived of, or can no longer use, the information that Krampitz supposedly converted. An actionable conversion claim requires that the plaintiff be deprived of its property, and failure to adequately plead that element is fatal to any conversion claim. *See Jacobs*, 2016 WL 1180182, at *3.

Third, although Count V lacks detail, it apparently alleges conversion of the very same information at issue in the MUTSA claim, with the exception of the flawed allusions to a credit card. Plaintiffs cannot simultaneously maintain a MUTSA claim and a conversion claim if both involve the same information. Minn. Stat. § 325C.07; *see also Superior Edge, Inc. v. Monsanto Co.*, 964  F. Supp. 2d 1017, 1039-40 (D. Minn. 2013). Therefore, in the event the Court determines that Stratasys has pleaded the existence of a trade secret in its MUTSA claim, it must dismiss Stratasys' conversion claim on that ground alone.

In sum, Stratasys only supports its conversion claim with vague and conclusory allegations and, in any event, does not allege facts to establish that it has been deprived of the use of any information allegedly taken by Krampitz. For these reasons, the Court should dismiss Count V for failure to state a claim.

**c. Count VII fails to state a claim because "unfair competition" is not an independent cause of action recognized under Minnesota law.**

In Count VII, Stratasys alleges a claim of unfair competition against Defendants. "Unfair competition is not a stand-alone tort with specific elements."

18

*Cenveo Corp. v. S. Graphic Sys., Inc.*, 784 F. Supp. 2d 1130, 1142 (D. Minn. 2011). Rather, "it describes a general category of torts which courts recognize for the protection of commercial interests." *Id.* (alteration omitted) (quoting *Zimmerman Grp., Inc. v. Fairmont Foods of Minn., Inc.*, 882 F. Supp. 892, 895 (D. Minn. 1994)). "In order to pursue a claim for unfair competition, a plaintiff must identify the underlying tort that is the basis for the claim." *Id.* "Where a plaintiff bases its claim of unfair competition on the same underlying factual allegations as its other independent claims, the unfair competition claim is duplicative of the independent claims and must be dismissed." *Id.*

Here, Stratasys expressly alleges that its unfair competition claim is based on "misappropriating Stratasys' Confidential Information" (i.e. its state and federal trade secrets claims) and "breaching the restrictive covenants with Stratasys" (i.e. its breach of contract and breach of duty of loyalty claims). Complaint ¶ 110. Because these allegations are the same as other claims alleged in the Complaint, Stratasys' unfair competition claim is duplicative and Count VII should be dismissed.

### d. Count IX pleads insufficient facts to state a violation of the MDTPA.

In Count IX, Stratasys alleges a violation of the MDTPA, Minn. Stat. § 325D.44. The MDTPA lists thirteen types of conduct actionable as deceptive trade practices. Minn. Stat. § 325D.44, subd. 1. Stratasys alleges that Defendants

violated the following subsections: "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services"; "(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another"; and "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have." *Id.* § 325D.44, subd. 1(2), (3), (5); *see also* Complaint ¶ 115.

An MDTPA claim is considered a fraud claim and is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See, e.g.*, *Podpeskar v. Makita U.S.A., Inc.*, 247 F. Supp. 3d 1001, 1010 (D. Minn. 2017); *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 983 (D. Minn. 2011). Therefore, "[c]laims under Minn. Stat. § 325D.44 must be pled with specificity." *Coyne's & Co., Inc. v. Enesco, LLC*, 565 F. Supp. 2d 1027, 1044 (D. Minn. 2008). "Courts have construed this requirement to mean that 'the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Podpeskar*, 247 F. Supp. 3d at 1010 (quoting *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 898 (D. Minn. 2013)).

As grounds for a violation of the MDTPA, Stratasys states only that

> Defendants, in the course of their business, vocation or occupation, caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or services and as to an affiliation, connection, or association with Stratasys, and have represented that services they offered and/or the Defendants themselves have sponsorship, approval, or characteristics that they do not have.

Complaint ¶ 114. This rote statement of elements is not a fact allegation sufficient to plead a claim under Rule 8's baseline pleading standard, and it is a far cry from the heightened requirements of Rule 9. Flyspecking the Complaint for additional detail likewise fails to illuminate specific misleading statements or conduct. Stratasys alleges that Krampitz: publicized Stratasys seminars on the Nova Machina website, *id.* ¶ 41; included both his Stratasys and Nova Machina roles in a professional biography, among his other accomplishments, *id.* ¶ 45; and contacted a Stratasys client from his Nova Machina account, on one occasion, *id.* ¶ 49. None of these allegations imply any misleading acts by Defendants, nor do any of the other allegations in the Complaint. Stratasys does not even make conclusory allegations of fraud or deception. By all accounts, Krampitz's conduct was truthful. In short, Stratasys' allegations do nothing "to facilitate [Defendants'] ability to respond and to prepare a defense to charges of fraud." *Masterson Personnel, Inc. v. The McClatchy Co.*, 2005 WL 3132349, at *4 (D. Minn. Nov. 22, 2005) (quoting *Comm. Prop. Inv. Inc. v. Quality Inns Int'l Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)). Therefore, Stratasys does not adequately plead a violation of the MDTPA and Count IX must be dismissed.

### e.  Count X pleads insufficient facts to state a claim of account stated.

In Count X, Stratasys alleges a claim of account stated against Defendants. The doctrine of account stated is an exception to "[t]he general rule . . . that liability for interest is purely a matter of contract, requiring a promise to pay it." *Am. Druggists Ins. v. Thompson Lumber Co.*, 349 N.W.2d 569, 573 (Minn. App. 1984). "[U]nder the doctrine of account stated, if one party renders a statement of account to the other party, and that other party retains the accounting for an unreasonably long time without objecting to it, then the party is deemed to have assented to that accounting." *Toyota-Lift of Minn., Inc. v. Am. Warehouse Sys., LLC*, 868 N.W.2d 689 (Minn. App. 2015). Account stated applies only if "a debtor retains a detailed billing statement" reflecting the amount owed to the creditor. *Discover Bank v. Lindwall*, 2014 WL 1344313, at *3 (Minn. App. Apr. 7, 2014). In sum, a claim of account stated requires allegations that: (1) the plaintiff submitted a statement of account to the defendant that includes an accounting or detailed statement of the amount owed; and (2) the defendant retained the accounting for an unreasonably long time without objection. Stratasys fails to plead both items.

First, the Complaint alleges that the cease and desist letter provided the only written notice of the amount Stratasys expected Krampitz to pay. *See* Complaint ¶

56; Pl. Ex. C.[4] A cease and desist letter is not a "statement of account" in any meaningful sense of the word. And, even if the letter could theoretically stand in for a statement of account, it cannot do so here because it lacks any detail or accounting of how Stratasys calculated the amount owed. *See* Pl. Ex. C at 1 (stating only that "[t]he amount to be repaid is $55,279.44," without additional detail). On its face, the amount demanded is suspect without detailed accounting—it represents approximately $15,000 more than Krampitz would expect to owe under the employment contract.[5] Given a lack of explanation for how Stratasys arrived at the $55,279.44 figure, Krampitz's retention of the cease and desist letter does not indicate any assent to the correctness of that amount.

Second, the Complaint alleges that Stratasys sent the cease and desist letter to Krampitz on November 10, 2017. *See* Complaint ¶ 56; Pl. Ex. C. On December 21, 2017, Stratasys filed the Complaint seeking collection of the $55,279.44 on grounds of account stated. It simply defies logic that possession of any bill for one

---

[4] Stratasys also verbally demanded repayment of $55,279.44 one week prior to sending the cease and desist letter. The verbal demand suffers from the same flaws as the written demand and does not alter the analysis.

[5] In the employment contract, Stratasys estimated that Krampitz would receive a total of $82,000 between his signing bonus and relocation expenses. *See* Pl. Ex. A at 2 (a $30,000 bonus and an estimated $52,000 in relocation expenses). It further provided that Krampitz would repay 50% of that amount if he left Stratasys between 12 and 24 months (which he did). *Id.* Therefore, Krampitz would reasonably expect to pay approximately $41,000.

month and eleven days can constitute an "unreasonably long time," such to indicate the debtor's assent to the stated amount.

For these reasons, Stratasys does not plead adequate facts to support its claim of account stated and Count X must be dismissed. In total, and for the foregoing reasons, the Court should dismiss Counts IV-VII and Counts IX-X of the Complaint.

## 2. Remand to state court.

The DTSA claim provides the sole basis for the Court's original jurisdiction over the Complaint. *See* Complaint ¶ 9. Because dismissal of the DTSA claim is warranted under Rule 12(b)(6), the Court may decline to exercise supplemental jurisdiction over Stratasys' surviving state law claims. *See* 18 U.S.C. § 1367(c)(3). Dismissal of surviving state law claims is left to the "broad discretion" of the Court. *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1141 (8th Cir. 2014). "[T]he balance of interests usually will point toward declining to exercise jurisdiction over the remaining state law claims." *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1017 (8th Cir. 2015) (quoting *In re Canadian Import Antitrust Litig.*, 470 F.3d 785, 792 (8th Cir. 2006)). Defendants note that this case is at its very earliest stages, such that neither the parties nor the Court have expended substantial resources litigating or adjudicating the case in

federal court. *See Thomas*, 743 F.3d at 1141. Defendants respectfully submit that the balance of interests weigh in favor of remand in this case.

## CONCLUSION

By pleading nine claims against Krampitz, Stratasys appears to have bitten off more than it can chew. While it supports three of its claims with sufficient facts, the remaining six claims lack the necessary factual detail to satisfy the pleading requirements and survive a motion to dismiss. Therefore, the Court should dismiss Counts IV-VII and IX-X and remand the remaining claims to state court.

Dated January 10, 2018 **MADIA LAW LLC**

  /s/ Zane Umsted
Zane Umsted, MN #0398761
J. Ashwin Madia, MN #0321187
323 Washington Ave. N. #200
Minneapolis, Minnesota 55401
Tel. 612.349.2732
Fax 612.235.3357